UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

_____
                                        )
ENID LOZADA-MIRANDA,                    )
                                        )
        Plaintiff,                      )
                                        )
v.                                      )        CIVIL NO. 3:18-CV-01410
                                        )
COMMISSIONER OF SOCIAL                  )
SECURITY,                               )
                                        )
        Defendant.                      )
_____)

MEMORANDUM AND ORDER

August 11, 2020

SOROKIN, J.[1]

        Enid Lozada-Miranda seeks reversal and remand of a decision by the Commissioner of

the Social Security Administration ("the Commissioner") denying her Disability Insurance

Benefits ("DIB").  Doc. No. 23.  The Commissioner seeks an order affirming her decision.  Doc.

No. 24.  For the reasons that follow, Lozada-Miranda's Motion for Order Reversing the

Commissioner's Decision is DENIED, and the Commissioner's request to affirm his decision is

ALLOWED.

_____
[1] Of the District of Massachusetts, sitting by designation.

I.      BACKGROUND

A.      Procedural History

On January 29, 2013 Lozada-Miranda applied for DIB, alleging an onset of disability of May 7, 2012.  A.R. at 186.[2]  Her application was denied initially on April 25, 2013 and upon reconsideration on April 1, 2014.  Id. at 197, 211-12.  On May 20, 2014 Lozada-Miranda requested a hearing before an administrative law judge ("ALJ").  Id. at 225-26.  A video hearing was conducted on June 13, 2016.  Id. at 22.  By decision on July 27, 2016, the ALJ found Lozada-Miranda was not disabled. Id. at 31.

Lozada-Miranda filed a timely request for review of the ALJ's determination on August 9, 2016.  Id. at 295.  The Appeals Council denied her request for review in a letter dated May 10, 2018, rendering the ALJ's 2016 determination the final decision of the Commissioner.  Id. at 1. Lozada-Miranda filed this action appealing the Commissioner's decision on June 21, 2018.  Doc. No. 3.  She was granted leave to proceed in forma pauperis in October 2018, Doc. No. 8, and summons issued in June 2019, Doc. No. 9.  Service was completed a month later, and the Commissioner answered the complaint and submitted the administrative record in October 2019. Briefing deadlines were extended three times at the request of the parties.  Doc. Nos. 17-22. Ultimately, Lozada-Miranda moved to reverse the Commissioner's decision on March 17, 2020, Doc. No. 23, and the Commissioner asked the Court to affirm his decision on April 13, 2020, Doc. No. 24.  The matter was transferred to the undersigned's docket pursuant to 28 U.S.C. § 292(b) on April 17, 2020.  Doc. No. 25.

---

[2] Citations to "A.R." are to the administrative record, which appears as Document 16-1 on the docket in this matter. Page numbers are those assigned by the agency and appear in the lower right-hand corner of each page.

B.      Lozada-Miranda's Mental Impairments

In her application, Lozada-Miranda claimed to suffer from depression and Post Traumatic Stress Disorder ("PTSD").  A.R. at 186.  She first sought treatment with Dr. Jose Lopez-Marquez in 2012, seeing the doctor eight times between May 7, 2012 and February 19, 2013.  Id. at 80.  Lozada-Miranda sought out Dr. Lopez-Marquez complaining of "sadness, trouble staying asleep, nightmares…low appetite…fatigue, weakness…anxiety, restlessness, and a lot of fear."  Id. at 80-81.  Lozada-Miranda traced the origin of her 2012 symptoms to earlier personal tragedies: the death of her grandfather, an assault she had experienced, the death of her father, and years of domestic violence.  Id. at 81-83.

In her hearing before the ALJ, Lozada-Miranda testified that she had worked as a manager of a clothing store for 15 years, but lost her job when the store closed in January 2011.  Id. at 44.  Lozada-Miranda then spent a year and a half unsuccessfully looking for a new job.  Id.  During this period, Lozada-Miranda struggled to keep up with her financial obligations and began to spend the majority of her time at home.  Id. at 84.  Approximately one-and-a-half years after losing her job, Lozada-Miranda made her first visit to Dr. Lopez-Marquez.  Id.

Dr. Lopez-Marquez chronicled Lozada-Miranda's symptoms as well as elements of her personal history that contributed to her depression.  Id. at 81-85.  He also performed tests to gauge Lozada-Miranda's memory and mathematical skills, in addition to her self-awareness and social functioning.  Id. at 87.  Dr. Lopez-Marquez prescribed anti-depressants, a sedative, and an antipsychotic medication.  Id. at 88.  In September and October of 2012, when Lozada-Miranda's symptoms showed no signs of improvement, Dr. Lopez-Marquez increased her dosages.  Id. at 88-89, 104.  Between May 2012 and February 2013, Dr. Lopez-Marquez consistently assigned

GAF[3] scores between 40 and 45, attributing Lozada-Miranda's symptoms to financial concerns, her unemployment, and the recent death of her father.  See, e.g., id. at 109 (assigning a GAF score of 40 and listing Axis IV (psychosocial and environmental) problems as "Financial, unemployment problems [and] Father's death.").

On February 19, 2013, Lozada-Miranda appeared "sad, unable to sleep, having nightmares…subdued, [and] depressed."  Id. at 90.  She complained of seeing "shadowy shapes" and hearing voices.  Id.  Dr. Lopez-Marquez assigned a GAF score of 40 and maintained Lozada-Miranda's medication regimen.  Id. at 90, 93.  Then, in a letter dated February 22, 2013, Dr. Lopez-Marquez recommended Lozada-Miranda for hospitalization due to "exacerbation of [her] symptoms," including "hearing confused voices and seeing shadowy shapes, as well as non-structured wishes to die."  Id. at 113.  Lozada-Miranda was admitted to a hospital where she was examined by a psychiatrist, a nurse, and a social worker, showed signs of depression and anxiety, but denied experiencing hallucinations or thoughts of suicide or homicide.  Id. at 28,

---

[3] "The Global Assessment of Functioning ('GAF') scale rates overall psychological functioning on a scale of 0-100 that takes into account psychological, social, and occupational functioning." Sanchez v. Colvin, 134 F. Supp. 3d 605, 609 n.1 (D. Mass. 2015) (citation omitted); see Lopez-Lopez v. Colvin, 138 F. Supp. 3d 96, 111 (D. Mass. 2015) (noting the Social Security Administration continues to use the GAF scale despite it no longer appearing in the current version of the *Diagnostic and Statistical Manual of Mental Disorders*).  A GAF score between 31 and 40 indicates "[s]ome impairment in reality testing or communication" or "major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood."  Riley v. Berryhill, No. CV 16-109637-DJC, 2017 WL 3749415, at * 3 n.4 (D. Mass. Aug. 30, 2017).  A GAF score between 41 and 50 indicates "[s]erious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  Colon v. Astrue, 841 F. Supp. 2d 495, 498 n.3 (D. Mass. 2012) (citations and quotation marks omitted).  A GAF score between 51 and 60 indicates "[m]oderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."  Id. (citations and quotation marks omitted).

117.  She was assigned a GAF score of 75 by her examiners and released the following day.  Id. at 117.  Lozada-Miranda did not see Dr. Lopez-Marquez between February 2013 and May 2014, but returned to see the doctor on May 30, 2014, and saw him approximately monthly until April 22, 2016.

On April 19, 2013 Lozada-Miranda was examined by Dr. Carmen Sepúlveda for a mental status assessment in connection with her disability claim.  Id. at 427.  Dr. Sepúlveda noted that Lozada-Miranda was "cooperative…coherent, logical, and relevant."  Id. at 429-31.  She observed also that Lozada-Miranda "has suicidal and homicidal ideation" but that "she does not show obsessions, compulsions, [or] phobias."  Id. at 430.  Dr. Sepúlveda also noted Lozada-Miranda's experience with hallucinations and observed that her legs and one hand were shaking.  Id. at 429-31.  Dr. Sepúlveda concluded that, while suffering from a major depressive disorder with psychotic features, Lozada-Miranda was capable of performing simple tasks, solving problems, making decisions, and understanding instructions, but had a poor capacity "to adapt to changes and be consistent."  Id. at 431.  Dr. Sepúlveda assigned a GAF score of 56, which corresponds to a "moderate" prognosis.  Id.

Lozada-Miranda's medical files, including examination reports of Drs. Lopez-Marquez and Sepúlveda, were then examined by a consultative psychiatrist, Dr. Barbara Hernandez. Id. at 436.  Dr. Hernandez concluded that Lozada-Miranda's symptoms were "moderate" and that Lozada-Miranda retained the "capacity to perform on simple tasks and to relate[] well with others."  Id. at 443.  Additionally, Dr. Hernandez concluded that Dr. Lopez-Marquez's medical opinion regarding Lozada-Miranda's memory and concentration was "not consistent with the extensive and longitudinal information in the report about [Lozada-Miranda's] precipitant factors and [life history]."  Id. at 444.

5

Next, Lozada-Miranda was examined by consultative psychiatrist Dr. Jorge Suria Colón on March 20, 2014.  Id. at 450.  Dr. Colón was tasked with rendering "an opinion regarding the effects of her alleged mental condition, if any on her social and occupational functioning" as well as an "opinion…regarding her capacity to handle funds."  Id.  Dr. Colón noted:

> Her sociability has decreased. Ms. Lozada Miranda describes difficulty falling asleep. There is difficulty staying asleep. She describes feelings of sadness. A loss of energy is reported. Feelings of worthlessness are present. Ms. Lozada Miranda has symptoms of anxiety. The claimant reports that irritability has been present since depression started. She stated that her symptoms cause her lack of energy and motivation and limit her social and work activities.

Id. at 451.  However, Dr. Colón also found that Lozada-Miranda exhibited normal speech, appropriate affect, appropriate thought content and associations, and no signs of hallucinations, delusions, or suicidal ideology.  Id. at 453.  Additionally, Dr. Colón tested Lozada-Miranda's memory, attention, and concentration and found her to display adequate capabilities, including an ability to handle funds.  Id. at 454.  Dr. Colón assigned a GAF score of 55 and concluded that her "prognosis from a psychiatric point of view will depend on [her] health problems and response to treatment."  Id. at 455.

On March 31, 2014, Dr. Jesus Soto examined the medical evidence in Lozada-Miranda's file and observed that there were "no significant changes in functional limitations" between Lozada-Miranda's first disability determination in 2013 and her reconsideration in 2014.  Id. at 461.  Dr. Soto concluded that Lozada-Miranda was able to "understand and remember simple instructions," and that despite her symptoms of depression, she remained "cooperative, spontaneous, with good eye contact, [and] normal psychomotor activity."  Id. at 465-66.  Dr. Soto opined that Lozada-Miranda was not disabled.  Id. at 468.

C.      The ALJ Hearing

On June 13, 2016, Lozada-Miranda appeared before the ALJ via video teleconferencing. Id. at 38.  She was thirty-nine years old at the time of the ALJ hearing.  Id. at 39.  Describing her depression, Lozada-Miranda explained that she spends all day locked in her room lying down with her eyes closed, not wanting to go out to see anyone.  Id. at 42, 47.  Lozada-Miranda testified that her daughter drives her places because she is too fearful to drive, id. at 40, and that she is unable to care for her granddaughter because the child's crying "make[s] [her] sick."  Id. at 43.  Lozada-Miranda also told the ALJ that her medications have helped her to improve "a little," but that they "put [her] to sleep and make [her] shake."[4]  Id.

When asked if she would still be working had the clothing store she managed not closed, Lozada-Miranda replied: "I would say that I would, because that was one of the things that affected me.  I lost my job.  I wasn't able to get another anywhere."  Id.  She further testified, however, that she believes she is unable to work because she requires medication to "stay calm," but that the pills she takes "make [her] fall asleep."  Id. at 46.  Lastly, Lozada-Miranda testified that her daughter and her mother help remind her to take her medication.[5]  Id. at 47.

---

[4] At no point in his treatment notes did Dr. Lopez-Marquez describe Lozada-Miranda experiencing side effects from the medication he prescribed her, and on at least one occasion he noted she explicitly denied any side effects.  See A.R. at 91 ("The patient states [on February 27, 2013] that there have not been any side effects.").  Moreover, in her visits with consultative examiners, Lozada-Miranda never complained of side effects.  Lozada-Miranda does not tie any of her challenges in this Court to an allegation that the ALJ failed to consider the impact of side effects on her ability to work, so the Court need not pursue this point further.
[5] A Vocational Expert ("VE") also appeared and testified at the hearing, but the Court need not recount this testimony as none of Lozada-Miranda's challenges arise from it.

D.      The Administrative Decision

The ALJ first found that Lozada-Miranda met the insured status requirements of the

Social Security Act and that she was last insured on December 31, 2015.  Id. at 24.  Next, the

ALJ conducted the usual five-step sequential evaluation.[6]  Id. at 23-24.  At the first step of the

inquiry, the ALJ found that Lozada-Miranda did not engage in substantial gainful activity

between her alleged onset date of May 7, 2012 and her date last insured of December 31, 2015.

Id. at 24.  At step two, the ALJ found that Lozada-Miranda suffered from one severe impairment:

major depressive disorder.  Id. at 24-25.  At step three, the ALJ found that Lozada-Miranda's

condition did not meet or medically equal any impairment listed in the relevant appendix to the

regulations.  Id. at 25.  Here, the ALJ noted that Lozada-Miranda had moderate restrictions in

activities of daily living, and that she experienced a "severe lack of motivation to venture outside

of her home or perform household chores."  Id.  The ALJ also found moderate difficulties in the

areas of social functioning, concentration, persistence, and pace, but concluded that Lozada-

Miranda's periods of stability prevent "finding additional limitations."  Id. at 25-26.  Lozada-

Miranda does not challenge the ALJ's findings at steps one, two, or three.

---

[6] The five steps of the requisite analysis are: 1) whether the claimant is engaged in substantial
gainful activity (if so, she is not disabled and the inquiry ends); 2) whether the claimant has a
severe impairment or combination of impairments that is severe (if not, she is not disabled and
the inquiry ends); 3) whether any of the claimant's impairments meet or medically equal an
impairment listed in an appendix to the relevant regulations (if so, she is disabled and the inquiry
ends); 4) whether the claimant is able to perform her past relevant work (if so, she is not disabled
and the inquiry ends); and 5) considering the claimant's age, education, work experience, and
RFC, whether she is capable of performing other work (if not, she is disabled).  See 20 C.F.R.
§ 404.1520(a)(4); Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 6-7 (1st Cir.
1982).

After step three, the ALJ considered Lozada-Miranda's residual functional capacity ("RFC"),[7] and found that she could perform "a full range of work at all exertional levels" so long as "[t]he work demand[s] no more than understanding, remembering, and carrying out simple, ordinary, routine tasks; making basic decisions; and adjusting to simple changes in the work place." Id. at 26.  The ALJ further provided that the work must "involve only occasional interaction with the public."  Id.  In reaching this conclusion, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."  Id.

With the RFC determination in mind, as well as the testimonies of Lozada-Miranda and the VE, the ALJ concluded at step four that Lozada-Miranda was unable to perform her past relevant work as a store manager, as such "skilled work" posed "mental demands" that exceeded her present limitations.  Id. at 30.  At step five, the ALJ found that, considering Lozada-Miranda's age, education, work experience, and RFC, there were jobs that Lozada-Miranda was capable of performing.  Id.  Specifically, the ALJ noted that, while Lozada-Miranda had several moderate non-exertional limitations, she was "capable of making a successful adjustment to other work that existed in significant numbers in the national economy."  Id. at 31.  As a result, the ALJ concluded that Lozada-Miranda was not disabled during the period from her alleged onset date in May 2012 through the end of 2015 when she was last insured and, thus, eligible for disability benefits.  Id.

---

[7] An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments.  20 C.F.R. §§ 404.1520(e), 404.1545.

II.     LEGAL STANDARDS

The District Court may enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).  However, the Court may not disturb the Commissioner's findings where they are supported by substantial evidence and the Commissioner has applied the correct legal standard.  Id.  Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); accord Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981); see Bath Iron Works Corp. v. U.S. Dep't of Labor, 336 F.3d 51, 56 (1st Cir. 2003) (noting substantial evidence is less than a preponderance of the evidence). This standard of review "is more deferential than it may sound to the lay ear." Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018).  When the Commissioner's finding is not supported by substantial evidence, however, or results from an error of law, the Court will not uphold it.  42 U.S.C. § 405(g).

When the administrative record reasonably might support multiple conclusions, the Court is not free to disturb the Commissioner's decision if it is supported by substantial evidence. Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 770 (1st Cir. 1991); see Richardson, 402 U.S. at 399 (noting resolution of conflicts in evidence, including medical evidence, is the Commissioner's task).  The Supreme Court has emphasized that "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." Am. Textile Mfrs. Inst., Inc. v. Donovan, 452 U.S. 490, 523 (1981) (quotation marks omitted).  Administrative findings of fact are not conclusive, however, "when derived by ignoring evidence, misapplying the law, or

10

judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per

curiam).  Moreover, an ALJ is not permitted to "substitute his own layman's opinion for the

findings and opinion of a physician," Gonzalez Perez v. Sec'y of Health & Human Servs., 812

F.2d 747, 749 (1st Cir. 1987), nor may he disregard relevant medical evidence in making his

determination.  Nguyen, 172 F.3d at 35.

ALJs commonly review assessments provided by three categories of medical experts:

sources who have treated the claimant for their impairments ("treating sources"), sources who

have examined the claimant for the purposes of rendering an opinion in connection with

their disability claim, and sources who have reviewed the claimant's medical records but have

not treated or examined the claimant.  See generally 20 C.F.R. §§ 404.1527.[8]  "A treating

source's opinion on the question of the severity of an impairment will be given controlling

weight so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with the other substantial evidence in [the] record.'"  Polanco-

Quinones v. Astrue, 477 F. App'x 745, 746 (1st Cir. 2012) (per curiam) (quoting 20 C.F.R. §

404.1527(c)(2)).  In other words, there is "a general presumption of deference to the treating

physician's opinion."  Abubakar v. Astrue, No. 1:11-cv-10456-DJC, 2012 WL 957623, at *8 (D.

Mass. Mar. 21, 2012).  However, the opinion of a treating physician need not be given

controlling weight where the ALJ determines that it is "inconsistent with the other substantial

evidence in [the] case record."  20 C.F.R. § 404.1527(c)(2); see generally Falcon-Cartagena v.

Comm'r of Soc. Sec., 21 F. App'x 11, 12-13 (1st Cir. 2001) (per curiam) (a treating physician's

opinion is given less weight when it is inconsistent with the balance of evidence on record).

---

[8] Citations are to the regulations in effect at the time of the 2016 hearing.

Where an ALJ does not give controlling weight to a treating physician's opinion, he must determine how much weight to accord the opinion based on the following factors: "1) length of treatment relationship and frequency of examination; 2) nature and extent of the treatment relationship; 3) how well supported the conclusion is by relevant evidence; 4) how consistent the opinion is with the record as a whole; [and] 5) how specialized the knowledge is of the treating physician." Abubakar, 2012 WL 957623, at *9; *see* 20 C.F.R. § 404.1527(c). The ALJ need not expressly discuss each factor, but must give "good reasons" for the weight afforded to a treating source's medical opinion. Bourinot v. Colvin, 95 F. Supp. 3d 161, 177 (D. Mass. 2015) (citing 20 C.F.R. § 404.1527(c)(2)).

The opinions of other examining and non-examining sources are accorded weight based on the extent to which they are supported by relevant evidence, whether they are consistent with the rest of the medical record, the level of specialized knowledge demonstrated by the source, and any other factors deemed by the ALJ to be relevant to the particular inquiry. Abubakar, 2012 WL 957623, at *11; 20 C.F.R. §§ 404.1527(c). The opinion of a non-treating physician may satisfy the substantial evidence standard where an ALJ determines not to give controlling weight to a treating physician's opinion and it is clear that the non-treating examiner reviewed the claimant's medical findings with care. See Berrios Lopez v. Sec'y of Health & Human Servs., 951 F. 2d 427, 431 (1st Cir. 1991) (affirming a non-treating doctor's medical opinion as substantial evidence); Agron–Bonilla v. Comm'r. of Soc. Sec., Civil No. 08-2111 (DRD)(JA) 2009 WL 4670538, at *5 (D.P.R. 2009) (affirming ALJ denial of benefits that relied on opinions of non-treating state agency physicians). Ultimately, where the findings of a claimant's treating physician differ from those of other examining and non-examining sources,

"it is the Secretary's responsibility to choose between conflicting evidence." Burgos Lopez v. Sec'y of Health & Human Servs., 747 F. 2d 37, 41 (1st Cir. 1984).

While the ALJ must consider all available evidence, he is "not obligated to discuss every bit of evidence." Frost v. Barnhart, 121 F. App'x 399, 400 (1st Cir. 2005) (per curiam).  Rather, there is a presumption "that the ALJ has considered all of the evidence before him." Quigley v. Barnhart, 224 F. Supp. 2d 357, 369 (D. Mass. 2002).

III.   DISCUSSION

Lozada-Miranda argues that the ALJ erred in assessing her mental condition, alleging several deficiencies which she contends merit reversal or remand.  In particular, Lozada-Miranda takes issue with the weight the ALJ gave to the opinion evidence in the record.  None of Lozada-Miranda's criticisms justify remand.

A.   Dr. Sepúlveda's Opinion

First, Lozada-Miranda alleges that the ALJ erred in assigning significant weight to certain aspects of Dr. Sepúlveda's medical opinion while failing to mention other "notable objective findings by Dr. Sepúlveda."  Doc. No. 23 at 7.  This interpretation of the record, however, ignores the fact that the ALJ explicitly noted the limitations in Dr. Sepúlveda's findings and accorded this evidence less weight as a result.

Dr. Sepúlveda opined that Lozada-Miranda could perform "simple task[s], solve problems, [make] decisions, [and] understand instructions" but that "her capacity to adapt to changes and be consistent[] is poor."  A.R. at 431.  The doctor also noted that Lozada-Miranda was experiencing shaking in her legs and one of her hands and that she was unable to manage funds.  Id. at 429-31.  The ALJ discussed Dr. Sepúlveda's findings at several points throughout his opinion.  See, e.g., id. at 26 (examining Dr. Sepúlveda's report and noting that Lozada-

Miranda at times had difficulty recalling short term and immediate items from memory).

Weighing this evidence alongside the other medical evidence, the ALJ assigned Dr. Sepúlveda's

opinion significant weight "for its function-by-function informative value," but elected not to

assign the opinion greater weight "because it does not adequately inform as to the extent of the

claimant's 'poor ability' to perform some functions." Id. at 29.  In other words, the ALJ gave

Dr. Sepúlveda's opinion great, but not controlling, weight.

Lozada-Miranda objects to the ALJ's omission of Dr. Sepúlveda's findings of shaking

legs and one hand and an inability to manage funds, but she fails to articulate how including a

discussion of these symptoms would materially change the ALJ's decision.  See Doc. No. 23 at 7

("These are some notable objective findings by Dr. Sepúlveda that the ALJ *failed to mention*.")

(emphasis added).  Moreover, there is a distinction between what the ALJ must *consider* and

what they must *explain*.  SSR 06-03p, 2006 WL 2329939, at *6-7.  Here, the ALJ clearly states

that he carefully considered the entire record, explicitly acknowledged the medical opinion

evidence of Dr. Sepúlveda, and provided his reasoning for the weight he assigned in his decision.

Weighing the evidence, the ALJ concluded that Lozada-Miranda is capable of performing work

so long as the job "demand no more than understanding, remembering, and carrying out simple,

ordinary, routine tasks; making basic decisions; and adjusting to simple changes in the work

place." A.R. at 26.  Thus the ALJ recognized that Lozada-Miranda had certain limitations in her

ability to work, a finding that is entirely consistent with the opinion of Dr. Sepúlveda.  In

addition, a careful review of the record reveals that, although Lozada-Miranda mentioned at her

hearing before the ALJ that she had experienced shaking, which the ALJ acknowledged in his

opinion,  neither Dr. Lopez-Marquez nor any of the consultative examiners aside from Dr.

Sepúlveda observed shaking in their examinations, while another examiner, Dr. Colón, explicitly

noted that Lozada-Miranda was capable of handling funds.  See id. at 454 ("The claimant is able to handle funds at present.").  As such, the Court will not disturb the weight assigned to Dr. Sepúlveda's medical opinion evidence; it is supported by substantial evidence.

      B.    <u>Dr. Colón's Assessment</u>

Lozada-Miranda next argues that the ALJ erred in according partial weight to the opinion of psychiatric consultative examiner Dr. Colón for two reasons.  First, Lozada-Miranda argues that, "[e]xcept for 'concentration', Dr. [Colón]'s mental exam of the Plaintiff was almost perfect. An almost perfect exam is not consistent with all the medical evidence in the file."  Doc. No. 23 at 8.  Second, Lozada-Miranda argues that Dr. Colón failed to consider Dr. Lopez-Marquez's treatment records, despite claiming to have done so.  Id.  Neither of these arguments merits reversal.

Dr. Colón found that Lozada-Miranda exhibited "[s]igns of moderate depression" and assigned a GAF score of 55.  Id. at 453-54.  The symptoms Dr. Colón noted include "difficulty falling asleep…difficulty staying asleep…feelings of sadness…loss of energy…feelings of worthlessness…[and] symptoms of anxiety."  Id. at 451.  These findings do not accord with Lozada-Miranda's characterization of the opinion as "almost perfect," and at no point in his decision did the ALJ characterize the opinion of Dr. Colón in this way.  Taking into account the fact that other medical evidence throughout the record suggested that Lozada-Miranda often appeared more limited than what was found by Dr. Colón, the ALJ accorded Dr. Colón's opinion only partial weight.  Id. at 29.

"Generally, the more consistent an opinion is with the record as a whole, the more weight [an ALJ] will give to that opinion."  20 C.F.R. § 404.1527(c)(4).  "[T]he responsibility for weighing conflicting evidence, where reasonable minds could differ as to the outcome, falls on

… the ALJ."  <u>Seavey v. Barnhart</u>, 276 F.3d 1, 10 (1st Cir. 2001).  Thus, to the extent that Dr. Colón's assessment of Lozada-Miranda is discordant with the rest of the medical opinion evidence, it was for the ALJ, not this Court, to consider and weigh.  Here, the ALJ recognized that Dr. Colón's assessment ascribed to Lozada-Miranda fewer limitations than the other medical experts found.  This finding was favorable to Lozada-Miranda and justified the ALJ's decision to give the assessment less weight.  Furthermore, as it is not clear that the ALJ based any part of Lozada-Miranda's RFC on Dr. Colón's finding, and Lozada-Miranda has not suggested how the RFC would be materially different had the ALJ assigned no weight to Dr. Colón's assessment, the Court rejects this attack on the ALJ's decision.

Second, Lozada-Miranda argues that "Dr. Colón makes clear in his report that he considered Dr. Lopez'[s] treatment records; and that is just not true."  Doc. No. 23 at 8.  But this argument is conclusory at best.  Lozada-Miranda does not point to any specific evidence, medical or otherwise, that Dr. Colón failed to consider in making his assessment, nor does she explain the basis for her belief that Dr. Colón lied in making his report.  Dr. Colón acknowledged Lozada-Miranda's relationship with Dr. Lopez-Marquez and explicitly based his conclusions, in part, on Dr. Lopez-Marquez's findings.  A.R. at 451.  The Court  has reviewed the entire administrative record, including the records of Drs. Lopez-Marquez and Colón, and found nothing to suggest that Dr. Colón misrepresented the basis for his opinion or failed to consider anything, let alone an important piece of Dr. Lopez-Marquez's evaluation.  In these circumstances, substantial evidence supports the ALJ's weighing of Dr. Colón's opinion, and Lozada-Miranda's challenge fails.

C.    <u>Other Consultants</u>

Lozada-Miranda also argues, in a single paragraph, that the ALJ erred in assigning partial

weight to the opinions of consultative psychiatrists Drs. Barbara Hernandez and Jesus Soto, both

of whom reviewed the medical evidence and opined that Lozada-Miranda was capable of

performing simple work.  Doc. No. 23 at 8-9; A.R. at 446, 466.  Lozada-Miranda argues that

these opinions "seemingly neglect to consider other areas of limitation, like difficulties adjusting

to changes in routine."  Doc. No. 23 at 8.

At the outset, the opinion of a non-examining consultant cannot serve as substantial

evidence if it is "based on a significantly incomplete record, *and* it . . . fails to account for a

deterioration in the claimant's condition."  <u>Alcantara v. Astrue</u>, 257 F. App'x 333, 334 (1st Cir.

2007) (per curiam) (emphasis added).  "On the other hand, the ALJ may rely on [such] evidence

when the information in that evidence remains accurate."  <u>Abubakar</u>, 2012 WL 957623, at *12.

Here, the consultants examined Lozada-Miranda one-to-two years following her alleged onset

date. Lozada-Miranda does not allege, nor does her treating physician note, a deterioration in her

condition during or after this time.  Instead, the treating notes of Dr. Lopez-Marquez suggest that

Lozada-Miranda's GAF scores actually increased, from 40 to 45 in the years 2012 and 2013 to

between 45 and 50 in 2015 and 2016.  A.R. at 28.  Thus, Lozada-Miranda has not pointed to any

way in which the record reviewed by the consultative examiners was incomplete, nor do the

reports of any of Lozada-Miranda's doctors show a deterioration in her condition.

Both Dr. Hernandez and Dr. Soto describe in their reports having considered the medical

evidence available to them.  <u>Id.</u> at 438-40, 459-64.  To the extent that these evaluations failed to

discuss certain aspects of Lozada-Miranda's limitations, the ALJ was justified in assigning them

less weight as a result, but it was not erroneous for the ALJ to consider the aspects of Lozada-

Miranda's condition that these opinions *did* discuss.  In sum, the ALJ committed no error in relying on these opinions to the extent that they were consistent with one another and the rest of the available evidence.

        D.      <u>Dr. Lopez-Marquez's Opinion</u>

      Next, Lozada-Miranda argues that the ALJ erred when he "totally ignored the clinically observed signs of Dr. [Lopez-Marquez]."  Doc. No. 23 at 9.  Lozada-Miranda lists some of these observations that the ALJ allegedly ignored:

> May 7, 2012: Very sad, little patience, ill humored, hallucinations; sounds, confused ideas, anxiety (Tr. 417). August 11, 2012: irritable, anhedonia,[9] little concentration, anxiety, tension, worry, logical, relevant, poor verbal production, not adequate attention and judgment, concentration and insight, poor prognostic…September 12, 2012: regular appetite, crying, sadness, depressed, likes to be alone, ill humor much, little patience, hallucinations.

<u>Id.</u> at 9-10.  In his opinion, the ALJ noted that Dr. Lopez-Marquez "has treated the claimant's psychiatric disorder since May of 2012 on a bi-monthly basis, and continues to treat her currently…[and] maintains a diagnosis of major depressive disorder, manifested in symptoms characterized by sadness, fear, anxiety, apathy, restlessness, and tension, as well as auditory and visual hallucinations."  A.R. at 27.  Thus, while the ALJ's opinion does not contain an exhaustive list of Lozada-Miranda's symptoms, it fairly summarizes the major findings of Dr. Lopez-Marquez.  Additionally, the ALJ cites to Dr. Lopez-Marquez's treatment notes throughout his decision and relies on the opinion of Dr. Lopez-Marquez in evaluating the consistency of the consultative examiners' opinions.  <u>Id.</u> at 29.

---

[9] Anhedonia is "a psychological condition characterized by inability to experience pleasure in normally pleasurable acts." "Anhedonia," Merriam-Webster Online, https://www.merriam-webster.com/dictionary/anhedonia (accessed July 17, 2020).

While a treating physician's opinions generally must be given considerable weight in determining disability, an ALJ may disregard the treating physician's opinion with a showing of good cause.  Sosa v. Comm'r of Soc. Sec., 550 F. Supp. 2d 279, 285 (D. P.R. 2008) (citing Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir. 1994)).  An ALJ is not required to give controlling weight to a treating physician's opinion in determining whether a claimant is disabled when the treating doctor's opinion is inconsistent with other evidence in the record.  Falcon-Cartagena, 21 F. App'x at 12.  While the ALJ must explain with "good reasons" the weight given to the opinion of a treating physician, 20 C.F.R. § 416.1527(c)(2), they are not required to address each and every clinical finding.  Instead, the ALJ is simply required to "state with particularity the weight given to different medical opinions and the reasons for doing so." Hidalgo-Rosa v. Colvin, 40 F. Supp. 3d 240, 247 (D.P.R. 2014); see also Johnson v. Colvin, 204 F. Supp. 3d 396, 409 (D. Mass. 2016) (reasons given by the ALJ must be "sufficiently specific to make it clear to any subsequent reviewers.")

Here, the ALJ decided not to give controlling weight to the opinion of Dr. Lopez-Marquez because more recent treatment records indicated an improvement in Lozada-Miranda's symptomology.  See A.R. at 28 ("[M]ore recent treatment records indicate a hygienic appearance, cooperative, affable state, as well as logical and relevant speech.").  In addition, the ALJ noted that the events identified by both Lozada-Miranda and Dr. Lopez-Marquez as the underlying causes of her depression "occurred up to twenty years before the alleged onset date," and further observed that Lozada-Miranda "was able to maintain sufficient functionality to sustain work" for years despite those events.  A.R. at 27.  Even Dr. Lopez-Marquez had made repeated observations that Lozada-Miranda was cooperative, logical, coherent, and affable, exposing inconsistencies within the context of his own records, see, e.g., A.R. at 94, 98, 103,

106, 109, 120, 123, 126, 129, and leading several of the consultative examiners to note that there were discrepancies between Dr. Lopez-Marquez's findings, their own observations of Lozada-Miranda, and her medical record.  See, e.g., A.R. at 441 (noting that "discrepancies between the [treating physician] report and [Dr. Sepúlveda's] observations were detected."); id. at 461-65 ("Now, Dr. Lopez['s] [prescription] list suggests worsening…however, Dr. Lopez['s] current report is identical to his past report findings.").

Further, Lozada-Miranda's GAF scores as assigned by Dr. Lopez-Marquez fluctuated during the period leading up to the ALJ's determination.[10]  Noting these fluctuations, the ALJ accorded Dr. Lopez-Marquez's GAF scores "significant weight to the extent that they reveal volatility in the claimant's symptomology, and that they connote some limitations in mental functionality."  Id. at 28.  Given this volatility, as well as the internal inconsistencies in his treatment records and the more recent evaluations by other examiners, it was appropriate for the ALJ to consider Dr. Lopez-Marquez's findings alongside those of the other physicians who examined Lozada-Miranda, rather than giving them controlling weight.  See Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 144 (1st Cir. 1987) ("We must affirm the Secretary's [determination], even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence.").

    E.    Hallucinations

Finally, in a single sentence, Lozada-Miranda argues that the ALJ failed to explain "how [Lozada-Miranda] would be capable of simple work given [her] hallucinations."  Doc. No. 23 at 12.  This cursory argument fails.  Lozada-Miranda has the burden of proving the extent of her

---

[10] From 2012 to 2013, Lozada-Miranda was assigned GAF scores between 40 and 45.  In 2014 the scores ranged from 45 to 55.  From 2015 until the time her case was adjudicated, Lozada-Miranda's scores ranged from 45 to 50. A.R. at 32.

limitations.  Arrington v. Berryhill, No. 17-1047, 2018 WL 818044, at *1 (1st Cir. Feb. 5, 2018).

The ALJ explicitly referenced Lozada-Miranda's experience with hallucinations.  A.R. at 27.

However, Lozada-Miranda failed to demonstrate how her hallucinations would have affected her

ability to work, and on multiple occasions denied experiencing any hallucinations.  See, e.g.,

A.R. at 117 (hospitalization report noting that Lozada-Miranda denies experiencing any

hallucinations).  Indeed, Lozada-Miranda testified at her hearing that if her clothing store had not

closed, she would still be working, and that she would have worked had she been hired for any of

the jobs for which she applied following her store's closing.  Id. at 44-45.  Where none of the

available medical evidence suggests that Lozada-Miranda's hallucinations would prevent her

from performing the jobs identified by the ALJ, nor did her own testimony support such a

finding, substantial evidence supports this aspect of the ALJ's determination.

IV.     CONCLUSION

        For the foregoing reasons, Lozada-Miranda's motion for an order reversing or remanding

the Commissioner's decision (Doc. No. 23) is DENIED, and the Commissioner's request for an

order affirming her decision (Doc. No. 24) is ALLOWED.

                                        SO ORDERED.


                                        /s/ Leo T. Sorokin
                                        United States District Judge